IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NANCY ANDERSON | * |
| Plaintiff, | * |
| v. | * |
| BRITE DENTAL CORPORATION d/b/a CREATIVE DENTAL CARE, a Florida Corporation; MOUHANNAD BUDEIR, D.D..S.; FARDIN ZARE, D.D.S,, THEODORE KELTS, D.D.S.; and MERCK & CO., INC., | * Case No. 8:07-cv-00965-JDW-EAJ |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT MERCK & CO., INC.'S**
**OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendant Merck & Co., Inc. ("Merck"), by its undersigned counsel, hereby files this memorandum in opposition to Plaintiff's Motion to Remand. The Court should decline to hear that motion now. Plaintiff's claims against Merck in this case are based upon the same form allegations pled against Merck in dozens of cases that involve the prescription medication FOSAMAX® ("Fosamax") and allegations that the plaintiff developed osteonecrosis of the jaw.. The Judicial Panel on Multidistrict Litigation ("MDL Panel") has instructed that such cases should be heard as part of the Fosamax MDL proceedings in the Southern District of New York, and the process is underway to transfer this case to the MDL Court. Plaintiff's attempt in this case to add additional defendants in an effort to defeat diversity jurisdiction are no different from similar attempts that have been unsuccessfully made by other plaintiffs in other districts, and those cases have already been transferred to the MDL Court for proper, and coordinated,

disposition. This Court should postpone consideration of Plaintiff's Motion to Remand until the MDL Panel determines whether to transfer this case for such coordinated treatment.

If this Court were to address Plaintiffs' Motion to Remand, that motion should be denied.[1] Plaintiff's own allegations and her admissions in her motion papers demonstrate that far more than $75,000 is in controversy in this case, and that the in-state dentists upon whom the Plaintiff bases her remand motion have been fraudulently/improperly joined in this action. Plaintiff bases her claims against Merck upon the same allegations pled by nearly every other plaintiff in the Fosamax cases. These claims focus on what warnings Merck allegedly should have provided Plaintiff's prescribing physician since she began taking Fosamax in 1996, and these claims do not materially differ from the claims asserted in the other Fosamax cases that have been consolidated in the Fosamax MDL proceedings. Conversely, Plaintiff's claims against the Florida-resident dentists are based upon subsequent actions allegedly taken by those dentists nearly 10 years after Plaintiff began taking Fosamax. These claims against the dentists are not based upon the same transactions or occurrence as the claims against Merck. Because the dentists are not properly joined in this action, they should be dropped as parties from this case, and Plaintiff's Motion to Remand should be denied.

## PROCEDURAL HISTORY

Plaintiff Nancy Anderson is a citizen of Florida who claims to have been injured as a result of using Fosamax at her physician's direction. Complaint ¶¶ 2, 54-55.

---

[1] On June 13, 2007, before the Plaintiff filed her Motion to Remand, Merck filed a Motion to Stay this case until the MDL Panel decides whether to transfer it to the Fosamax MDL proceedings. That brief stay should be granted until the MDL Panel fulfills its role of determining how this case would most efficiently proceed.

2

Fosamax is a prescription medication manufactured by Defendant Merck, which is a resident of New Jersey. On August 16, 2006, the Judicial Panel on Multidistrict Litigation (the "MDL Panel") issued a transfer order establishing MDL Proceeding No. 1789, styled *In re Fosamax Products Liability Litigation*, to coordinate the many cases filed across the country relating to Fosamax. *See In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347 (Jud. Pan. Mult. Lit. 2006). As of this date, the MDL Panel has issued at least 26 Conditional Transfer Orders requiring the transfer of at least 68 actions to MDL No. 1789, where at least 170 cases are now pending, including both the transferred cases and cases filed directly in the transferee court.

In many of the actions already transferred to the Fosamax MDL proceedings, motions to remand have been filed, including many cases in which Plaintiffs have sought to avoid diversity jurisdiction by adding third parties, including sales representatives, pharmacies, or distributors. In each of these cases, the District Courts concluded that the transferee court should address the remand issues in a coordinated manner, including the question of whether additional defendants—such as the in-state dentists in this case—were fraudulently joined. *See* Order filed 6/14/2007 in *Demsky, et al. v. Merck & Co., et al.*, Case No. CV 07-2839 (FMC) (PJWx) (C.D. Cal.) (staying all proceedings and dismissing motion to remand without prejudice to renew before transferee court) (Ex. 1 hereto); Minute Orders dated 4/12/2007 and 5/15/2007 in *Walla v. Merck & Co., et al.*, Case No. 07-C-1864 (N.D. Ill.) (same); (Ex. 2 hereto); Order filed 2/7/2007 in *Bogard, et al., v. Merck & Co., Inc., et al.,* Case No. C-06-6917 SC (N.D. Cal.) (same) (Ex. 3 hereto); Order filed 2/2/2007 in *Ferraro, et al. v. Merck & Co., et al.*, Case No. CV 06-7733 (FMC) (PJWx) (C.D. Cal.) (same) (Ex. 4 hereto); Order filed 12/7/2006 in *Clayton,*

3

*et al. v. Merck & Co., et al.*, Case No. CV 06-6398 (FMC) (PJWx) (C.D. Cal.) (same) (Ex. 5 hereto); Order filed 12/6/2006 in *Morris, et al. v. Merck & Co., et al.*, Case No. CV 06-5587 (FMC) (PJWx) (C.D. Cal.) (same) (Ex. 6 hereto); *see also* Order filed 3/16/2007 in *Potgeiter v. Merck & Co., Inc.,* Case No. 07-cv-00002-DMC-MF (D.N.J.) (staying case pending transfer, where motion to remand had been filed) (Ex. 7 hereto); Order filed 2/2/2007 in *Goya v. Merck & Co., et al.,* Case No. 06-CV-2574 H (AJB) (S.D. Cal.) (deferring decision on motion to remand for 60 days while MDL Panel addresses transfer issues) (Ex. 8 hereto); Order filed 11/01/2006 in *Purdy, et al., v. Merck & Co., et al.*, Case No. 2:06-cv-223-KS-MTP (S.D. Miss) (staying case pending transfer, where motion to remand was filed) (Ex. 9 hereto). With the exception of the *Demsky* case, which is currently before the MDL Panel for decision as to whether it should be transferred, each of the cases cited above has been transferred to the Fosamax MDL proceedings, and all remand issues will be addressed by the transferee court.

  Plaintiff filed this case in Florida state court, and Merck removed the case to this Court on June 4, 2007, after Merck was served on May 14, 2007. Merck informed the MDL Panel of this tag-along action in a letter dated June 7, 2007. On June 13, 2007, Merck filed its Motion to Stay in this Court, in which Merck asks that these proceedings be stayed until the MDL Panel determines whether this case should be transferred to the Fosamax MDL proceedings. Plaintiff thereafter filed her Motion to Remand on June 15, 2007. On June 18, 2007, the MDL Panel issued Conditional Transfer Order No. 25, which provides for the transfer of this action to the Fosamax MDL proceedings. *See* Conditional Transfer Order No. 25 (Ex. 10 hereto).

Case 1:07-cv-09685-JFK-EA Document 88 Filed 06/25/2007 Page 4 of 16

4

**FACTUAL BACKGROUND**

    A.      **The Plaintiffs' Complaint.**

Plaintiff alleges that she developed osteonecrosis of the jaw as a result of taking Fosamax prescribed by her physician. Complaint ¶ 58. Plaintiff claims that Merck "knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant MERCK did not adequately and sufficiently warn consumers, including Plaintiff Nancy Anderson, or the medical community, of such risks." Complaint ¶ 53. The allegations against Merck pled in this Complaint are virtually word-for-word identical to the Fosamax allegations pled in numerous other cases that have been transferred to the Fosamax MDL proceedings. *Compare* Complaint ¶¶ 35-63 with Complaint ¶¶ 22-45, filed in *Walla v. Merck & Co., et al.* (Ex. 11 hereto); Complaint ¶¶ 23-54, filed in *Purdy et al. v. Merck & Co., et al.* (Ex. 12 hereto); Complaint ¶¶ 18-44, filed in *Clayton v. Merck & Co., et al.* (Ex. 13 hereto).

In addition to the standard allegations filed against Merck in all Fosamax cases, the Complaint contains numerous allegations that demonstrate the significant damages that the Plaintiff seeks. Plaintiff complains that after oral surgery in October 2004, she experienced severe jaw pain and infection, including "constant throbbing" and "oozing pus," and that she was ultimately treated for a "pathologic fracture of her anterior mandible" as well as "severe osteonecrosis of the jaw and osteomyelitis." Complaint ¶¶ 14, 25, 28, 32, 58. Plaintiff also claims that osteonecrosis, or bone death, "is very difficult to treat and typically is not reversible," and that it "is a serious medical event and can result in severe disability and death." Complaint ¶¶ 43, 45. Plaintiff further claims to

5

have suffered "severe mental and physical pain and suffering," to have "sustained permanent injury," and to have undergone "emotional distress." Complaint ¶ 59.

Merck is a citizen of New Jersey; it is a New Jersey corporation and its principal place of business is in New Jersey. Complaint ¶ 7. In an effort to keep this case in Florida state court, Plaintiff has agglomerated her claims against Merck, based upon information that Plaintiff alleges that Merck was required to provide to her prescribing physician in 1996 (when she allegedly began taking Fosamax, Complaint ¶34) and thereafter, with claims against a number of dentists ("the Dental Defendants") allegedly arising from a broken tooth during dental surgery. Complaint ¶¶ 64-70. These latter claims, however, are based on an entirely different set of facts and occurrences than the Plaintiff's claims against Merck.

## ARGUMENT

### A.   This Action Should Be Stayed.

As set forth in Merck's Motion to Stay, this action should be stayed until the MDL Panel determines whether Plaintiffs' Motion to Remand would be more efficiently addressed in this Court or in concert with other similar motions raised in the Fosamax cases. "The pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings," *In re Vioxx Products Liab. Litig.*, 360 F. Supp. 2d 1352 (Jud. Pan. Mult. Lit. 2005), and "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997). A brief delay in this case, while the MDL Panel decides whether to consolidate this case

with the Fosamax MDL proceedings, will serve the interests of judicial economy and will not prejudice any of the parties. *See id.* at 1362.

As noted above, the transferee court, as part of the Fosamax MDL proceedings, will address remand issues in many of the cases before it, and numerous such cases have been stayed and transferred to the Fosamax MDL proceedings so that plaintiffs' remand arguments can be addressed in a coordinated fashion. The Stay Orders at Exhibits 1 through 9 all stayed cases in which Motions to Remand had been filed, and each of those cases has been transferred to the Fosamax MDL proceedings with the lone exception of *Demsky,* which is currently before the MDL Panel for decision.

Given the fact that these same issues are being and will be raised in other Fosamax cases that are or will be part of the Fosamax MDL proceedings, this Court should stay any decision on Plaintiff's motion to remand until the MDL Panel can make the appropriate determination as to whether this action, too, should be consolidated with the MDL proceedings.

    **B.    It Is Undisputed That There Is More Than $75,000 In Controversy In This Case.**

There is no merit to Plaintiff's contention that Merck failed to "establish the jurisdictional amount" required by this Court for diversity jurisdiction. The amount in controversy only needs to be demonstrated by a preponderance of the evidence. *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208-09 (11th Cir. 2007). In her Motion to Remand, Plaintiff concedes that her claim "likely exceeds $75,000" and states that she "believes the claim will exceed $75,000." Plf's Mot. to Remand at 6. Thus, both Merck and Plaintiff agree that more than $75,000 is, in fact, in controversy and there is no

7

factual dispute on this point. Plaintiff's admissions, by themselves, are sufficient to demonstrate that the Court's minimum jurisdictional amount has been satisfied.

In addition, the Complaint itself demonstrates that more than $75,000 is in controversy in this case. While Plaintiff has not pled a specific dollar amount in her complaint, she makes numerous factual allegations that demonstrate the magnitude of her claims. Plaintiff complains that after oral surgery in October 2004, she experienced severe jaw pain and infection, including "constant throbbing" and "oozing pus," and that she was ultimately treated for a "pathologic fracture of her anterior mandible" as well as "severe osteonecrosis of the jaw and osteomyelitis." Complaint ¶¶ 14, 25, 28, 32, 58. She alleges that osteonecrosis, or bone death, "is very difficult to treat and typically is not reversible," and that it "is a serious medical event and can result in severe disability and death." Complaint ¶¶ 43, 45. Plaintiff claims to have suffered "severe mental and physical pain and suffering," to have "sustained permanent injury," and to have undergone "emotional distress." Complaint ¶ 59. These factual allegations, by themselves, demonstrate that Plaintiff's claims seek to recover far more than the minimum jurisdictional threshold.[2]

It is well established that decisions rendered in comparable cases provide strong evidence that more than $75,000 is in controversy. *See Alshakenbeh v. Food Lion, LLC*, 2007 WL 917354, at 2 (M.D. Fla. March 23, 2007) (finding that defendant had shown the

---

[2] In other cases, plaintiffs have expressly limited their claims to less than the Court's jurisdictional threshold, by making a binding promise to recover only $75,000 or less. *See, e.g., Constant v. International House of Pancakes, Inc.*, Case No. 07-AR-0072-S, 2007 WL 1346604, at *5 (N.D. Ala. Apr. 30, 2007). Rather than limit her claims here, however, Plaintiff actually admits that she seeks to recover more than $75,000, while at the same time claiming that Merck has not proven that her claims are as large as she now admits.

8

requisite amount in controversy by citing verdicts in similar cases*); Lowe's OK'd Used Cars, Inc. v. Acceptance Ins. Co.,* 995 F. Supp. 1388, 1392-93 (M.D. Ala. 1998). As Merck cites in its notice of removal, the federal and state reporters are replete with reported cases in which jaw or similar facial injuries, such as those pled by Plaintiff, led to jury or court awards far in excess of $75,000. *See, e.g., Howie v. Walsh*, 609 S.E.2d 249 (N.C. App. 2005) (addressing jury award of $300,000 against dentist who fractured patient's jaw during procedure); *Becker v. Woods*, 806 N.Y.S.2d 704 (N.Y. App. Div. 2005) (affirming jury award of $840,000 in damages where dental patient suffered from permanent paresthesia); *Preston v. Dupont*, 35 P.3d 433 (Colo. 2001) (addressing jury award of more than $250,000 for damage to alveolar nerve in jaw); *Bowers v. Liuzza*, 769 So.2d 88 (La. App.), *writ. denied*, 776 So.2d 468 (La. 2000) (finding that minimum adequate damage award for nerve damage in jaw was an amount that exceeded $175,000); *Becker v. Halliday*, 554 N.W. 2d 67 (Mich. App. 1996) (jury award of $200,000 in damages, where syringe lodged in upper jaw); *Herpin v. Witherspoon*, 664 So.2d 515 (La. App. 1995) (plaintiff entitled to receive more than $75,000 as a result of temporomandibular joint (TMJ) dysfunction); *Washburn v. Holbrook*, 806 P.2d 702 (Or. App. 1991) (affirming jury finding of $400,000 in damages as a result of damage to jaw during root canal).

  In the same vein, there have been numerous cases awarding far more than $75,000 for claims based on osteonecrosis or avascular necrosis of the hip, knee, or other joint. *See, e.g., Barbee v. United States*, 2005 WL 3336504, at *1-2 (W.D. Wis. 2006) (finding that plaintiff suffered nearly $700,000 in damages for hip injuries that included avascular necrosis); *Shaver v. United States*, 319 F. Supp. 2d 649 (M.D.N.C. 2004)

9

(awarding more than $75,000 in damages for osteonecrosis in knee caused by automobile accident); *Piselli v. 75th Street Medical*, 808 A.2d 508 (Md. 2002) (addressing jury award of $410,000 for medical malpractice that led to avascular necrosis of the hip); *Collier v. Cawthon*, 570 S.E.2d 53 (Ga. App. 2002) (affirming jury award of $170,000 for avascular necrosis of the hip).

      **C.    The Dental Defendants Have Been Fraudulently And Improperly Joined, And Their Citizenship Should Be Ignored For Purposes Of Removal.**

Plaintiffs' claims in this case involve two different types of fraudulent joinder. First, a diverse defendant is fraudulently joined where he "is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998); *see also* Fed. R. Civ. Proc. 20. Second, a defendant is fraudulently joined where there is no possibility the plaintiff can establish a cause of action against the resident defendant or the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into court. *See Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997). Under either test, the possibility of establishing a properly joined cause of action must be reasonable rather than merely theoretical. *Legg v. Wyeth,* 428 F.3d 1317, 1324, 1325 n. 5 (11th Cir.2005).

Here, Plaintiff's claims against Merck lack any nexus to her claims against the Dental Defendants. Plaintiff claims that she was prescribed and began taking Fosamax 11 years ago, in 1996. Complaint ¶ 56. The nexus of those claims necessarily must focus on the information provided by Merck to her prescribing physician, because Merck owes no duty directly to the plaintiff. *See E.R. Squibb & Sons, Inc. v. Farnes*, 697 So.2d 825, 827 (Fla. 1997) (stating that prescription drugs "can be administered only under the

10

direction of a physician, and Florida law requires that the manufacturer provide an adequate warning only to the physician, or 'learned intermediary.'"). While she claims that she "would not have used FOSAMAX had Defendant MERCK properly disclosed the risks associated with the drug," Complaint ¶ 61, her own Complaint contradicts this conclusory assertion by stating that she *continues* to take Fosamax, despite her indisputable present knowledge of the alleged risks that she asserts in her Complaint. Complaint 34 (stating that she has been taking Fosamax from May 1996 to the present). Such contradictory allegations fail to state any claim against Merck. *See Espinosa v. State*, 690 So.2d 656, 657 n.1 (Fla. App., 5 Dist. 1997) (stating that "if a complaint contains conflicting allegations in the same count, the allegations negate each other and no cause of action is pled"); *Peacock v. General Motors Acceptance Corp.*, 432 So.2d 142, 146 (Fla. App., 1 Dist. 1983) (same).

Plaintiff's claims against the Dental Defendants are very different. These claims are based on events that occurred nearly 10 years after the Plaintiff was first prescribed and began taking Fosamax. Plaintiff asserts that, during oral surgery performed by one of the Dental Defendants in 2004, her tooth was broken off at the gum line, and that the Dental Defendants thereafter failed properly to diagnose and treat the resulting infection. (Complaint ¶¶ 15-33). There is no allegation that Merck had anything to do with this oral surgery. Rather, Plaintiff claims that the Dental Defendants failed to "timely diagnose and treat infection following extraction of tooth in an appropriate manner" and failed to refer Plaintiff "to a higher level of care after it was clear the infection was not being eradicated." (Complaint ¶¶ 65-67; *see also* Complaint ¶ 64). Plaintiff also alleges, in cursory form, that Brite Dental Care, the corporate Dental Defendant, failed to

11

"determine what medication she was taking," although no such allegation is made against the three individual dentists who treated her, and Plaintiff now disavows that this assertion has anything to do with Fosamax. (Complaint ¶ 64); *see also* Plf's Motion to Remand at 9 (stating that Plaintiff does not allege that the Dental Defendants "should have been aware of the alleged danger of Fosamax"). In essence, Plaintiff herself essentially admits that her claims against the Dental Defendants, for their alleged failure to treat her infection, have nothing to do with her claims alleging that Merck failed to provide adequate warnings to Plaintiff's prescribing physician.

For this reason, the fraudulent joinder of the Dental Defendants is obvious under well-settled state law. "A joint tort is essential to a joint action for damages therefor against several parties." *Gulf Refining Co. v. Wilkinson*, 114 So. 503, 506 (Fla. 1927). Here, however, Merck and the Dental Defendants are not joint tortfeasors because the duties alleged by Plaintiff are separated in time and in substance. For example, in *Albertson's, Inc. v. Adams*, 473 So.2d 231 (Fla. App., 2 Dist. 1985), *rev. denied*, 482 So.2d 347 (Fla.1986), the Florida intermediate appellate court concluded that a pharmacy and a doctor were not joint tortfeasors, and that the claims against them were not based upon the same transactions, where the pharmacy had filled a prescription improperly and the plaintiff's physician failed to notice, in a subsequent visit, that the prescription was incorrect. Even though these two alleged failures contributed to the same harm (resulting from the improperly filled prescription), the actions of the two involved disparate duties and different times. *Id.* at 233; *see also Touche Ross & Co. v. Sun Bank of Riverside,* 366 So.2d 465 (Fla. 3d DCA), *cert. denied,* 378 So.2d 350 (Fla.1979) (finding that plaintiff's claim that bank wrongfully accepted checks tendered in

12

furtherance of fraudulent scheme and its claim that accountants breached their duties in failing to detect the same fraudulent scheme were not "joint" torts, and that the bank and accountants were not jointly liable for the harm caused as a result of the fraud).

Thus, since Plaintiff's claims against the Dental Defendants are based on alleged negligence in performing oral surgery, diagnosing an infection, or referring Plaintiff "to a higher level of care," years after Plaintiff began taking Fosamax, such claims are not based upon the same transactions or occurrences as Plaintiff's products liability claims against Merck, and they are not properly joined in this case. In *In re Rezulin Prods. Liab. Litig.*, Case No. 00 Civ. 2483 (LAK), 2003 WL 21276425 (S.D.N.Y. June 2., 2003), the court found that malpractice claims against the plaintiff's former physicians were not properly joined to a products liability complaint, where the plaintiff alleged that the physicians had failed to properly diagnose and monitor the plaintiff's medical condition, where that condition allegedly arose from the use of a drug. The court held that the malpractice claim against the doctors did not arise from the same transaction or occurrence as the claims against the drug's manufacturer.. *Id.* at * 2. Plaintiff's claims against the Dental Defendants suffer from the same defect. *Cf. Greene v. Wyeth*, 344 F.

Supp. 2d 674, 683 (D. Nev. 2004) (severing claims against doctors in multiple plaintiff action, where claims were not based on a common transaction or occurrence).[3]

Finally, Plaintiff now disavows, in her Motion to Remand, any attempt to link Merck's alleged failure to provide warnings to her prescribing physician and her claims against the Dental Defendants. Motion to Remand at 9 (stating that "the Plaintiff **never** alleges the Medical Defendants should have been aware of the alleged danger of Fosamax," emphasis in original). Even had she not done so, however, it should be clear that she could not have filed suit against the Dental Defendants for failing to recognize an alleged link between Fosamax and osteonecrosis of the jaw, where the Plaintiff *also* contends that Merck concealed that same information. *See In re Baycol Prods. Litig.*, Case No. 03-3150, 2003 WL 23305516, at *2 (D. Minn, Dec. 15, 2003) (finding doctor fraudulently joined because, where plaintiff claimed that manufacturer failed to properly represent the risks of a drug, the plaintiff "failed to demonstrate that her physician knew or should have known of Baycol's risks"); *Spier v. Bayer Corp.*, No. 02-4835, 2003 WL 21223842 (D. Minn. May 27, 2003) (same); Opinion and Order filed October 3, 2003, in *Omobude v. Merck & Co., Inc.*, Civil Action No. 3:03CV528LN (S.D. Miss.), at 3 (finding doctors fraudulently joined to products liability complaint where Plaintiff

---

[3] Based on Merck's review of the pleadings and its contact with the clerk of the Florida state court before removal, Merck stated in its Notice of Removal on information and belief that Plaintiff's claims against the Dental Defendants may be barred by limitations. The Dental Defendants who have answered in this case also have raised the statute of limitations as an affirmative defense. Plaintiff bases its limitations argument primarily on a pleading that allegedly tolled the limitations period, but which does not contain a case number or otherwise show that it was ever filed. In response to Plaintiff's Motion to Remand, Merck made a second inquiry with the clerk of the Florida state court , but the clerk could not confirm by telephone whether this pleading had been filed. The Court does not need to address these limitations issues at this time, however. As discussed in the text above, this case is properly removed, and the Dental Defendants not properly joined, because the claims against the Dental Defendants are not based upon the same transaction or occurrence as the claims against Merck.

14

claimed that Merck concealed information relating to drug, and also claimed that the doctors failed to act upon that same information) (Exhibit 14 hereto). Plaintiff attempts to distinguish these cases by arguing that the plaintiffs in those cases had not made specific allegations of negligence against the doctors. Motion to Remand at 10-11. In this case, however, the factual allegations pled against the Dental Defendants in this case merely emphasize the extent to which the claims against the Dental Defendants and Merck are widely disparate in terms of the applicable duties, the facts relating to those alleged duties, and the time during which those alleged duties occurred or were breached.

## CONCLUSION

For all of the foregoing reasons, Merck respectfully submits that the Court should hold Plaintiffs' Motion to Remand in abeyance, pending the determination by the Judicial Panel on Multidistrict Litigation as to where this Motion may be most efficiently addressed. Should the Court choose to address this Motion, Merck asks that it be denied for the reasons set forth above.

Respectfully submitted,

/s/ Larry Hill_____
LARRY HILL
Florida Bar Number 173908
Moore, Hill & Westmoreland
Post Office Box 13290
Pensacola, Florida 32591-3290
Phone: 850/434-3541
Fax: 850/435-7899
lhill@mhw-law.com

*Attorneys for Merck & Co., Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic delivery pursuant to Fed. R. Civ. P. 5(b)(2)(D) to James A. Wardell, Esquire, Wardell & Quezon, P.A., 805 West Azeele Street, Tampa, FL 33606, and to Thomas Saieva, Esquire, 601 W. Swann Ave., Suite B, Tampa, FL 33606 this 25th day of June, 2007.

                                                 **/s/ Larry Hill**
                                                 LARRY HILL