**EXHIBIT 11**



ggd/lmj   3/26/2007 06-114   Firm ID 37599

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DIANNE WALLA,                          )
                                       )      **2007L003232**
        Plaintiff,                     )      **CALENDAR/ROOM B**
                                       )   Cause No.: ___ **TIME 00:00**
vs.                                    )      **Product Liability**
                                       )
MERCK & CO., INC., a New Jersey        )
corporation, WALGREEN COMPANY, an      )
Illinois corporation, and K MART       )
CORPORATION OF ILLINOIS, an            )
Illinois corporation,                  )
                                       )
        Defendants.                    )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dianne Walla, by and through her undersigned attorneys, files this Complaint for

Damages against Defendants Merck & Company, Inc., Walgreen Company and K-Mart Corporation,

showing this Court the following:

### INTRODUCTION

1.

This is a personal injury products liability proceeding brought by Plaintiff, Diane Walla, for

personal injuries caused to her by a product manufactured by Defendant Merck & Company, Inc.,

and sold by Defendant Walgreen Company and Defendant K Mart Corporation of Illinois.

### PARTIES

2.

Plaintiff Dianne Walla was born October 10, 1946.  At all relevant times Plaintiff was a

resident of Cook County, Illinois, and used the prescription drug FOSAMAX from approximately

1997, until approximately November 1, 2004.

**3.**

Defendant Merck & Company, Inc., is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey. The Defendant's registered office is at 820 Bear Tavern Road, City of West Trenton, Mercer County, New Jersey. Defendant may be served at the office of its registered agent in Illinois as follows: CT Corporation System, 208 La Salle Street, Suite 814, Chicago, Illinois.

**4.**

Defendant Merck & Company, Inc., was at all relevant times authorized to conduct business in the State of Illinois.

**5.**

Defendant Merck & Company, Inc., has regularly transacted business in the State of Illinois and continues to do so.

**6.**

Defendant Walgreen Company is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois. Defendant Walgreen Company may be served at the office of its registered agent in Illinois as follows: Allan M. Resnick, 200 Wilmot Road, Deerfield, Illinois 60015.

**7.**

Defendant Walgreen Company was at all relevant times authorized to conduct business in the State of Illinois.

8.

At all times material to this Complaint, Defendant Walgreen Company was in the business of retail sales of pharmaceuticals. Defendant Walgreen Company through its agents, servants, employees and apparent agents was the distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis and bone loss.

9.

Defendant Walgreen Company has regularly transacted business in the State of Illinois and continues to do so.

10.

Defendant K-Mart Corporation of Illinois (hereinafter "K-Mart Corporation") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Michigan. Defendant may be served at the office of its registered agent in Illinois as follows: CT Corporation System, 208 La Salle Street, Suite 814, Chicago, Illinois.

11.

Defendant K-Mart Corporation was at all relevant times authorized to conduct business in the State of Illinois.

12.

At all times material to this Complaint, Defendant K-Mart Corporation was in the business of retail sales of pharmaceuticals. Defendant K-Mart Corporation through its agents, servants, employees and apparent agents was the distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis and bone loss.

--3--

13.

Defendant K-Mart Corporation has regularly transacted business in the State of Illinois and continues to do so.

14.

At all relevant times Defendant, Merck & Company, Inc., through its agents, servants, employees and apparent agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis and bone loss.

## SUMMARY OF THE CASE

15.

Defendants, either directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold FOSAMAX for the treatment of osteoporosis, Paget's Disease, bone loss, and other off-label uses.

16.

As a result of the defective nature of FOSAMAX, persons who were prescribed and ingested FOSAMAX, including Plaintiff Dianne Walla, have suffered and may continue to suffer severe and permanent personal injuries, including osteonecrosis of the jaw.

17.

Defendant Merck & Company, Inc., concealed its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff Dianne Walla, other consumers, and the medical community.

-4-

18.

Defendant Merck & Company, Inc., failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

19.

Defendant Walgreen Company sold a defective product, FOSAMAX, to Plaintiff and failed to adequately warn Plaintiff about the risk of injury.

20.

Defendant K-Mart Corporation sold a defective product, FOSAMAX, to Plaintiff and failed to adequately warn Plaintiff about the risk of injury.

21.

As a result of the Defendants' actions and inaction, Plaintiff Dianne Walla was injured due to her ingestion of FOSAMAX, which has caused and will continue to cause Plaintiff various injuries and damages. Plaintiffs accordingly seek compensatory damages.

## FACTUAL BACKGROUND

22.

At all relevant times, Defendant Merck & Company, Inc. was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and/or selling FOSAMAX.

23.

At all relevant times, Defendant Walgreen Company and Defendant K-Mart Corporation were responsible for, or involved in distributing, and/or selling FOSAMAX.

24.

In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate, which is marketed by Merck as FOSAMAX, for various uses, including the treatment of osteoporosis and Paget's Disease.

25.

FOSAMAX falls within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease. Other drugs within this class such as Aredia and Zometa are also used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

26.

There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphophonates include the following: pamidronate (Aredia); ibandronate (Bondronat); and alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate, like the others, contains a nitrogen atom, whereas etridonate, clodronate, and tiludronate do not. The PDR for FOSAMAX confirms that the molecule contains a nitrogen atom.

27.

Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion,

–6–

and inflammation of the upper gastrointestinal tract, Merck knew or should have know that FOSAMAX, as a nitrogenous bisphosphonate, shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

28.

Merck knew and or should have known that bisphosphonates, including FOSAMAX, can cause widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow) in the jaw bones, and other jaw injuries.

29.

Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and is not reversible.

30.

Shortly after Defendants began selling FOSAMAX, reports of osteonecrosis of the jaw and other dental complications among users began surfacing, indicating that FOSAMAX shared the class effects of the other nitrogenous bisphosphonates. Despite this knowledge, Defendants failed to implement further study risk of osteonecrosis of the jaw relative to FOSAMAX. Rather than evaluating and verifying the safety of FOSAMAX with respect to osteonecrosis of the jaw, Defendants proposed further uses of FOSAMAX, such as FOSAMAX-D, and sought to extend the exclusivity period of FOSAMAX through 2018.

31.

On August 25, 2004, the United States Food & Drug Administration ("FDA") posted its ODS Postmarketing Safety Review on bisphosphonates -- specifically pamidronate (Aredia), zoledronic

–7–

acid (Zometa), risedronate (Actonel), and alendronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

32.

As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The FDA's review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, FOSAMAX.

33.

As a result, the FDA recommended and stated that the labeling for FOSAMAX should be amended by Merck to specifically warn about the risk of osteonecrosis of the jaw. Merck has refused to accede to the FDA's request and, to this day, still does not warn of the risk of osteonecrosis of the jaw in its FOSAMAX labeling.

34.

Rather than warn patients, and despite knowledge known by Defendants about increased risk of osteonecrosis of the jaw on patients using FOSAMAX, Defendants continues to defend FOSAMAX and minimize unfavorable findings.

35.

Consumers, including Plaintiff Dianne Walla, who have used FOSAMAX for treatment of osteoporosis, have several alternative safer products available to treat the conditions.

–8–

36.

Defendants knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn consumers, including Plaintiff Dianne Walla, or the medical community, of such risks.

37.

As a direct result, Plaintiff Dianne Walla was prescribed FOSAMAX and has been permanently and severely injured, having suffered serious consequences from the ingestion of FOSAMAX. Plaintiff Dianne Walla requires and will in the future require ongoing medical care and treatment.

38.

Plaintiff Dianne Walla has suffered from mental anguish from the knowledge that Plaintiff will have life-long complications as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

39.

Plaintiff Dianne Walla was prescribed and began taking FOSAMAX in March 2000.

40.

Plaintiff used FOSAMAX as prescribed and in a foreseeable manner. The FOSAMAX Plaintiff used arrived to her in a condition unchanged from the condition in which it left the control of Defendant Merck & Company.

–9–

41.

As a direct and proximate result of using FOSAMAX, Plaintiff has osteonecrosis of the jaw and has suffered permanent jaw injuries. Plaintiff, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

42.

Plaintiff used FOSAMAX which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

43.

Plaintiff would not have used FOSAMAX had Defendants properly disclosed the risks associated with the drug.

44.

Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking FOSAMAX. The running of any applicable statute of limitations has been tolled by reason of Defendant's fraudulent concealment.

45.

As a result of Defendant's actions, Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

—10—

## JURISDICTION AND VENUE

### 46.

Defendants are subject to the *in personam* jurisdiction of this Court, and venue is proper herein, by virtue of the facts that Defendants each did and/or does substantial business within the state of Illinois, and within the county of Cook, and committed torts in whole or in part in this state and county against Plaintiff, as more full set forth herein. Defendants K-Mart and Walgreen's ("the seller defendants") each maintain places of business within Cook County. Furthermore, each defendant advertised in Illinois and Cook County, and sold Fosamax within Cook County.

## COUNTS

### COUNT I: NEGLIGENCE - MERCK & CO., INC.

### 47.

Plaintiff re-alleges the above paragraphs, numbered 1 through 46, as if fully set forth herein.

### 48.

Defendant Merck owed Plaintiff, Dianne Walla, and other consumers, a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

### 49.

Defendant Merck failed to exercise due care under the circumstances and therefore breached this duty by:

    a.    failing to properly and thoroughly test FOSAMAX before releasing the drug to market;

–11–

b.    failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of FOSAMAX;

c.    failing to conduct sufficient post-market testing and surveillance of FOSAMAX;

d.    designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of FOSAMAX and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

e.    failing to exercise due care when advertising and promoting FOSAMAX; and

f.    negligently continuing to manufacture, market, advertise, and distribute FOSAMAX after Defendants knew or should have known of its adverse effects.

50.

As a direct and proximate consequence of Defendant Merck's actions, omissions, and misrepresentations, Plaintiff Dianne Walla sustained damage to her jaw, including osteonecrosis of the jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

–12–

51.

Defendant Merck's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendants and deter it from similar conduct in the future.

## COUNT II:

## NEGLIGENCE - WALGREEN CO. & K-MART CORPORATION

52.

Plaintiff re-alleges the above paragraphs, numbered 1 through 46, as if fully set forth herein.

53.

The seller Defendants owed Plaintiff, Dianne Walla, and other consumers, a duty to exercise reasonable care when distributing, and selling FOSAMAX.

54.

The seller Defendants owed to Plaintiff the following duties: to warn of any dangerous defects or side effects; to assure Plaintiff the products they sold did not cause users unreasonable and dangerous risks, reactions, and side effects; and to provide adequate post-sale warnings as it learned of Fosamax's substantial dangers.

55.

The seller Defendants knew or should have known that Fosamax caused unreasonably dangerous risks and serious side effects of which the general public would not be aware, based on the following information: the FDA ODS summary; the biologic mechanism of nitrogenous

--13--

bisphosphonates; the published literature regarding nitrogenous bisphosphonates, including Fosamax; and other information available to the reasonably prudent seller. The seller Defendants nevertheless sold Fosamax without adequate warnings of the dangers of Fosamax and knowing that there were safer methods and products for treatment of osteoporosis.

56.

The seller Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

a.     marketing, advertising, distributing, and selling FOSAMAX to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of FOSAMAX and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

b.     failing to exercise due care when advertising and promoting FOSAMAX; and

c.     negligently continuing to market, and distribute FOSAMAX after Defendants knew or should have known of its adverse effects.

57.

As a direct and proximate consequence of the seller Defendants; actions, omissions, and misrepresentations, Plaintiff Dianne Walla sustained damage to her jaw, including osteonecrosis of the jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent

–14–

conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

### COUNT III: STRICT LIABILITY - MERCK & CO., INC.

58.

Plaintiff re-alleges the above paragraphs, numbered 1 through 46, as if fully set forth herein.

59.

Defendant Merck manufactured, sold, distributed, marketed, and/or supplied FOSAMAX in a defective and unreasonably dangerous condition to consumers, including Plaintiff Dianne Walla.

60.

Defendant Merck designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendants.

61.

Plaintiff used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant Merck.

62.

FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

–15–

63.

FOSAMAX was defective in its design and was unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

64.

FOSAMAX was defective in design or formulation in that it posed a greater likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

65.

FOSAMAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiff, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

66.

Although Defendant Merck knew or should have known of the defective nature of FOSAMAX, it continued to design, manufacture, market, and sell FOSAMAX so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendants acted with conscious and deliberate disregard of the foreseeable harm caused by FOSAMAX.

67.

Plaintiff could not, through the exercise of reasonable care, have discovered FOSAMAX's defects or perceived the dangers posed by the drug.

–16–

68.

As a direct and proximate consequence of Defendant Merck's conduct, Plaintiff Dianne Walla sustained osteonecrosis of the jaw and other damages to her jaw bones. In addition, Plaintiff required and will continue to require healthcare. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity. Defendant Merck is strictly liable for the damages caused to Plaintiff by Fosamax.

69.

Defendant Merck's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendants and deter it from similar conduct in the future.

## COUNT IV:

## STRICT LIABILITY - WALGREEN CO. & K MART CORPORATION

70.

Plaintiff re-alleges the above paragraphs, numbered 1 through 46, as if fully set forth herein.

–17–

71.

The seller Defendants sold, distributed, marketed, and/or supplied FOSAMAX in a defective and unreasonably dangerous condition to consumers, including Plaintiff Dianne Walla.

72.

The seller Defendants designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by the seller Defendants.

73.

Plaintiff used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by the seller Defendants.

74.

FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

75.

FOSAMAX was defective in its design and was unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

76.

FOSAMAX was defective in design or formulation in that it posed a greater likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

–18–

77.

FOSAMAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiff, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

78.

Plaintiff could not, through the exercise of reasonable care, have discovered FOSAMAX's defects or perceived the dangers posed by the drug.

79.

As a direct and proximate consequence of the seller Defendants selling a defective product, Plaintiff Dianne Walla sustained osteonecrosis of the jaw and other damages to her jaw bones. In addition, Plaintiff required and will continue to require healthcare. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity. The seller Defendants are strictly liable for the damages caused to Plaintiff by Fosamax.

–19–

## <u>COUNT V: BREACH OF EXPRESS WARRANTY- MERCK & CO., INC.</u>

80.

Plaintiff re-alleges the above paragraphs, numbered 1 through 46, as if fully set forth herein.

81.

Defendant Merck expressly represented to Plaintiff Dianne Walla and other consumers and the medical community that FOSAMAX was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

82.

FOSAMAX does not conform to Defendant Merck's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries.

83.

At all relevant times FOSAMAX did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

84.

Plaintiff Dianne Walla, other consumers, and the medical community relied upon Defendant's express warranties relating to FOSAMAX.

85.

As a direct and proximate result of Defendant Merck's actions, Plaintiff Dianne Walla sustained serious osteonecrosis of the jaw and other damages to her jaw bones. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue

to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

86.

Defendant Merckt's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

## COUNT VI: BREACH OF IMPLIED WARRANTY - MERCK & CO., INC.

87.

Plaintiff re-alleges the above paragraphs, numbered 1 through 46, as if fully set forth herein.

88.

At all relevant times, Defendant Merck knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

89.

Defendant Merck was aware that consumers, including Plaintiff Dianne Walla, would use FOSAMAX for treatment of osteoporosis and for other purposes.

–21–

90.

Plaintiff and the medical community reasonably relied upon the judgment and sensibility of Merck to sell FOSAMAX only if it was indeed of merchantable quality and safe and fit for its intended use.

91.

Defendant Merck breached its implied warranty to consumers, including Plaintiff; FOSAMAX was not of merchantable quality or safe and fit for its intended use.

92.

Consumers, including Plaintiff, and the medical community, reasonably relied upon Defendant Merck's implied warranty for FOSAMAX.

93.

FOSAMAX reached consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendants.

94.

As a direct and proximate result of Defendant Merck's action, Plaintiff Dianne Walla sustained osteonecrosis of the jaw and other damages to her jaw bones. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization,

–22–

physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

95.

Defendant Merck's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

**COUNT VII: BREACH OF IMPLIED WARRANTY -**

**WALGREEN CO. & K MART CORPORATION**

96.

Plaintiff re-alleges the above paragraphs, numbered 1 through 46, as if fully set forth herein.

97.

At all relevant times, the seller Defendants knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

98.

The seller Defendant were aware that consumers, including Plaintiff Dianne Walla, would use FOSAMAX for treatment of osteoporosis and for other purposes.

–23–

99.

Plaintiff and the medical community reasonably relied upon the judgment and sensibility of the seller Defendants to sell FOSAMAX only if it was indeed of merchantable quality and safe and fit for its intended use.

100.

The seller Defendants breached the implied warranties to consumers, including Plaintiff; FOSAMAX was not of merchantable quality or safe and fit for its intended use.

101.

Consumers, including Plaintiff, and the medical community, reasonably relied upon the seller Defendants' implied warranties for FOSAMAX.

102.

FOSAMAX reached consumers without substantial change in the condition in which it was sold by the seller Defendants.

103.

As a direct and proximate result of the seller Defendants' actions, Plaintiff Dianne Walla sustained osteonecrosis of the jaw and other damages to her jaw bones. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization,

physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

## COUNT VIII:

## FRAUDULENT MISREPRESENTATION AND CONCEALMENT

## MERCK & CO., INC.

104.

Plaintiff re-alleges the above paragraphs, numbered 1 through 46, as if fully set forth herein.

105.

Defendant Merck made fraudulent misrepresentations with respect to FOSAMAX in the following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX had been tested and found to be safe and effective for the treatment of osteoporosis;

b. Defendant represented that FOSAMAX was safer than other alternative medications.

c. Defendant represented that there was no risk of osteonecrosis of the jaw associated with FOSAMAX.

106.

Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of FOSAMAX to consumers, including Plaintiff, and the medical community. Defendant knew or

–25–

should have known that the use of FOSAMAX causes serious and life threatening injuries but failed to warn the public, including Plaintiff and her physicians. For example:

a.     Merck knew for years prior to Plaintiff's ingestion of Fosamax that there were confirmed reports of osteonecrosis of the jaw associated with the use of Fosamax;

b.     Despite this knowledge, Defendant issued statements that it had no knowledge of any reports of Fosamax-associated osteonecrosis of the jaw;

c.     According to an interview with Merck officials cited by the American Dental Association, Merck had knowledge of at least 170 such reports, yet it continued to misrepresent to physicians and the public, including Plaintiff and her physicians, that it had no knowledge of reports of osteonecrosis of the jaw associated with Fosamax use;

d.     Additionally, during repeated statements to the press from 2004 to 2006, Defendant stated that it had conduced clinical trials involving thousands of patients and had no reports of osteonecrosis of the jaw;

e.     This statement was intended to deceive because osteonecrosis of the jaw is a very specific dental diagnosis that cannot be made by the physicians actually hired to monitor Merck's clinical trials;

f.     Merck had no dental monitoring protocol in place for its clinical trials and this statement constitutes fraud by false inference.

107.

The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

–26–

108.

Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of FOSAMAX.

109.

Plaintiff Dianne Walla, Plaintiff's doctors, and others relied upon the representations.

110.

Defendant's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

111.

As a direct and proximate result, Plaintiff Dianne Walla sustained osteonecrosis of the jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

112.

Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers

–27–

such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

113.

Defendant fraudulently concealed information with respect to FOSAMAX in the following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX was safe and fraudulently withheld and concealed information about the substantial risks of using FOSAMAX; and

b. Defendant represented that FOSAMAX was safer than other alternative medications and fraudulently concealed information which demonstrated that FOSAMAX was not safer than alternatives available on the market.

114.

Defendant had sole access to material facts concerning the dangers and unreasonable risks of FOSAMAX.

115.

The concealment of information by Defendant about the risks of FOSAMAX was intentional, and the representations made by Defendant were known by Defendant to be false.

116.

The concealment of information and the misrepresentations about FOSAMAX were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

–28–

### 117.

Plaintiff Dianne Walla, Plaintiff's doctors, and others relied upon the representations and were unaware of the substantial dental and oral risks of FOSAMAX which Defendant concealed from Plaintiff's doctors and Plaintiff.

### 118.

As a direct and proximate result of Defendant's fraudulent concealment and misrepresentation, Plaintiff Dianne Walla suffered osteonecrosis of the jaw and was caused to suffer severe and permanent injuries, including pain and mental and physical anguish and suffering, including a diminished capacity for the enjoyment of life, aggravation of preexisting conditions and activation of latent conditions, and a fear of developing other harmful conditions or problems as a result of the injury. Plaintiff has suffered and will continue to suffer a loss of wages and wage-earning capacity and has incurred expense for medical care and treatment due to the injuries caused by FOSAMAX.

### 119.

Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

### **GLOBAL PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant, as follows:

    a.       compensatory damages on each cause of action;

b.     punitive damages on each cause of action;

c.     reasonable attorneys' fees where recoverable;

d.     costs of this action; and

e.     such other additional and further relief as the Court may deem necessary, appropriate,

and just.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

Dixon Law Office
By: G. Grant Dixon III

Dixon Law Offices
1415 W. 55th Street
Suite 104
LaGrange, IL 60525
T: (708) 354-9880
F: (708) 354-9885
Cook County Firm No. 37599

and

OF COUNSEL:

TIMOTHY M. O'BRIEN
Florida Bar No. 055565
MICHAEL B. LYNCH
Florida Bar No. 668478
Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
316 South Baylen Street
Suite 600 (32502)
P. O. Box 12308
Pensacola, Florida 32591
T: (850) 435-7000
F: (850) 436-6084
**Attorneys for Plaintiff**