**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NANCY ANDERSON,

    Plaintiff,

                                                                         Case No.: 8:07-cv-00965-JDW-EAJ

v.

BRITE DENTAL CORPORATION d/b/a
CREATIVE DENTAL CARE, a Florida
Corporation; MOUHANNAD BUDEIR,
D.D.S.; FARDIN ZARE, D.D.S.;
THEODORE KIELTS, D.D.S.; and
MERCK & CO., INC.;

    Defendants.
_____/

**PLAINTIFF'S MOTION TO REMAND AND
MEMORADUM OF LAW**

       COMES NOW the Plaintiff, NANCY ANDERSON, by and through her undersigned legal counsel and hereby moves this Honorable Court, pursuant to 28 U.S.C. section 1447(c), for an Order remanding this case to the Florida State Court from which it was removed. As grounds, Plaintiff states that the removal was defective because there was no "fraudulent joinder" as alleged by the Removal Defendant, MERCK & Co., Inc. In support of this Motion, Plaintiff states as follows:

       1.      On May 4, 2007, the Plaintiff filed this action in Circuit Court of the Sixth Judicial Circuit, State of Florida, Pasco County, with Case No. 51-07-CA-2086-ES. The case alleges claims for medical malpractice against three individual Florida dentists/oral surgeons, and their employer, Brite Dental Corporation, a Florida corporation. Also included as a Defendant is Merck & Co. ("MERCK"), as the manufacturer of a pharmaceutical drug called Fosamax. MERCK is a New Jersey Corporation, doing

2

business in Florida, with its principal place of business in New Jersey. All actions related to this case took place in Pasco County, Florida.

2. Defendant MERCK has failed to meet the burden of establishing Federal Diversity Jurisdiction and this case should be remanded back to State Court and the Plaintiff should be awarded costs and attorney's fees for the improper removal.

3. MERCK alleges diversity by claiming that the resident Defendants are "fraudulently joined." MERCK knew at the time of filing for Removal that the resident Defendants were not fraudulently joined.

## MEMORANDUM OF LAW

The applicable rule of law states that on a Motion to Remand an action removed to Federal District Court on the basis of diversity of citizenship, the removing party bears the burden of proving the existence of Federal Jurisdiction. Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356 (11th Cir. 1996); Coker v. Amoco Oil Company, 709 F.2d 1433, 1440 (11th Cir. 1983) superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993); Lupo v. Human Affairs International, Inc., 28 F.3d 269 (2nd Cir. 1994).

Recently, the Second Circuit in Lupo, supra, discussed the basic policy regarding removal of an action from state court on the basis of diversity of jurisdiction saying:

" . . . we are mindful that:

The right to remove a State Court action to Federal Court on diversity grounds is statutory, see Little York Gold-Washin & Water Co. v. Keyes, 96 US. 199, 201, 24 L.Ed. 565 (1877), and must therefore be invoked to strict conformity with statutory requirements, see 1A J. Moore & B. Ringle, Moore's Federal Practice s. 0.157, at 33-34 (2nd ed. 1989). In light of the Congressional intent to restrict Federal Court Jurisdiction, as

3

well as the importance of preserving the independence of state governments, Federal Courts construe the removal statute narrowly, resolving any doubts against removability. See <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); 1A <u>J. Moore & B. Ringle, Moore's Federal Practice</u> s. 0.157, at 38 (2ed. 1989)."

### FRAUDULENT JOINDER

In analyzing the removal statute, 28 U.S.C.A. s. 1441(b), Courts require that once there have been allegations of "fraudulent joinder," the allegations must be plead with particularity and proved by "clear and convincing evidence." <u>Parks v. New York Times Co.</u>, 308 F.2d 474, 478 (5th Cir. 1962); <u>B., Inc. v. Miller Brewing Co.</u>, 663 F.2d 545, 549 (5th Cir. 1981); <u>Woods v. Firestone Tire and Rubber Co.</u>, 560 F.Supp. 580, 590 (S. D. Fla. 1983).

The burden of proving "fraudulent joinder" is a heavy one that rests with the removing party. <u>McMorris v. Stafford</u>, 655 F.Supp. 671, 672 (M.D. La. 1987) citing to <u>Green v. Amerada Hess Corp.</u>, 707 F. 2d 201, 205 (5th Cir. 1983) cert. Denied, 464 U.S. 1039, 104 S.Ct. 701 (1981); <u>Peters v. Pumpkin Air, Inc.</u>, 653 F. Supp. 825, 826-827 (M.D. La. 1986); <u>Crowe v. Coleman</u>, 113 F.3d 1536 (11th Cir. 1997).

Several Courts have held that in order to establish "fraudulent joinder," the removing party must show the following:

(a) That there is no possibility that the Plaintiff would be able to establish a cause of action against any one of the resident Defendants in State Court. <u>Crowe</u>, supra at 1538 (11th Cir. 1997); <u>Coker</u>, supra at 1140-41; or

(b) That there has been an outright fraud by the Plaintiff in pleading jurisdictional facts. <u>Coker</u>, supra, at 1440; <u>Tapscott</u>, supra at 1360, FN 17;

4

    Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 177, (5th Cir. 1968); or

(c) Whether there is a reasonable basis for predicting that state law might impose liability on the facts involved. Suleski, supra at 176; Katz v. Coast Armatori, F.C. et al., 718 F. Supp. 1508, 1512 (S.D. Fla. 1989); or

(d) Whether the Plaintiff "could conceivably recover." Katz, supra at 1512.

In addressing the issue of "fraudulent joinder," District Courts must resolve all uncertainties and questions of fact and controlling law in favor of the Plaintiff. Cabalceta, supra; Coker, 709 F.2d at 1440; B. Inc., at 549.

Courts have held that the determination of "fraudulent joinder" should be made based upon the Plaintiff's pleadings at the time of removal. Cabalceta, supra at 1561; Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347, 349 (1939).

Courts have also stated that "fraudulent joinder" can be determined by referring to state law which controls on the substantive issues and which will ultimately determine whether a cause of action exists. Keating v. Shell Chemical Co., 610 F.2d 328, 331 (5th Cir. 1980); Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962).

In Woods v. Firestone Tire and Rubber Co., 560 F.Supp. 588-589 (S.D. Fla. 1983), the Plaintiff, a Florida resident, filed a lawsuit against Firestone, Chevron, and Howell, also a Florida resident, for products liability and negligence. Firestone and Chevron alleged that the Complaint named the Defendant Howell as a defendant merely by virtue of his alleged status as an agent of Chevron. Id. at 590. Plaintiff raised the issue of a lack of complete diversity among the parties. Id. This Court looked to the

5

facts alleged by the Plaintiff in its Complaint and found that Howell was alleged to be an agent of Chevron and was alleged to have owed the Plaintiff a duty and breached such duty, which resulted in damages to the Plaintiff. Id. Accordingly, this Court found the Plaintiff's allegations to be sufficient "specific acts or omissions" on the part of Howell to make him a proper defendant to the action. Id. The action was remanded back to State Court based on a lack of complete diversity, and the fact that the non-diverse defendant did not join in the Notice of Removal. Wood, supra at 591.

More recently, in Triggs v. John Crump Toyota, Inc., 154 F.3d 1284 (11th Cir. 1998) the court stated "[j]oinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) Defendant. Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983), superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993). The second is when there is outright fraud in the Plaintiff's pleading of jurisdictional facts."

In accordance with these requirements, this case must be remanded to Florida State Court. There are four non-diverse party Defendants, and therefore this Court lacks jurisdiction.

It is the Defendant's burden to show by clear and convincing evidence that there is no possibility that the Plaintiff would be able to establish a cause of action against Brite Dental, Dr. Kielts, Dr. Budeir and/or Dr. Zare. The Defendant has not and cannot meet this burden, and therefore, the case must be remanded.

The removal was totally without merit. The undersigned has had to spend an extensive amount of time on this motion and this Court should award the Plaintiff

6

attorney's fees, pursuant to 28 U.S.C. §1447 (c).

## IMPROPER BASIS FOR REMOVAL

MERCK alleges that removal was proper because: 1) the amount in controversy exceeds $75,000.00; 2) there is diversity between the parties when the Court does not consider the "fraudulently joined" Defendants; and 3) the Medical Defendants are fraudulently joined because the claims are barred by the Statute of Limitations.

### A. *Amount In Controversy*

The Plaintiff has alleged that the cause of action exceeds $15,000.00, not $75,000.00, because that is the Florida Circuit Court Jurisdictional limit. The Defendant argues that surely the case is for more than $75,000.00 based upon a brief description of the injuries described in the complaint and previous damage awards in similar cases.

While the Plaintiff's claim likely exceeds $75,000.00, the only thing the Plaintiff has alleged is that it exceeds $15,000.00. It is the Defendant's burden to establish that this Court has jurisdiction, which includes establishing the case value exceeds the jurisdictional amount of $75,000.00. This could have been easily done through a request for admission. Instead, the Defendant quotes from the complaint using descriptive words it has already acknowledged come from a previously-filed Multi-district complaint that do little to establish value.

Defendant also string cites to numerous jury awards involving jaw injuries and avascular necrosis injuries to the hip. The Defendant fails to cite a single necrosis of the jaw injury or a single Fosamax damages award or settlement.

While the Plaintiff believes the claim will exceed $75,000.00, the Defendant has failed to establish the jurisdictional amount. Additionally, the Court is to rely upon the

7

allegations as plead in the complaint. Such reliance can only lead the Court to conclude that the amount in controversy is greater than $15,000.00.

### B. *Medical Defendants Are All Properly Joined and Non-Diverse To Plaintiff*

This case involves medical malpractice as well as product liability. The Plaintiff, Brite Dental, Dr. Kielts, Dr. Zare, and Dr. Budeir are all alleged to be residents of the State of Florida. Defendant MERCK is the only diverse Defendant. MERCK attempts to claim that the Florida Defendants were fraudulently joined in order to try to join this case into the MDL case in the Southern District of New York. However, the Defendant has no basis to allege fraudulent joinder and this case should be remanded back to the State Circuit Court in Pasco County from where it was removed.

In order for the Court to properly consider this Motion for Remand, it is important for the Court to understand the claim against MERCK and how it is inextricably intertwined with the medical negligence of the Co-Defendants. The Complaint explains the claims against MERCK beginning at Paragraph 34 under the section entitled "FOSAMAX FACTS".

The Complaint alleges that MERCK manufactures a drug called Fosamax. It is a nitrogenous bisphosphonates (¶ 38)[1]. The drug was prescribed for treating bone conditions such as osteoporosis and Paget's disease. It was determined during the 1990s and 2000s in medical studies and articles that frequent and common occurrences of osteonecrosis of the jaw were occurring within the nitrogenous bisphosphonates used for chemotherapy (¶ 39). The FDA later concluded that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy, but extended to oral

---

[1] "¶" designates the paragraph of the Complaint.

8

bisphosphonates, such as Fosamax (¶ 48). It was concluded that Fosamax inhibits endothelial cell function. It also inhibits vascularization of the affected area and induces ischemic changes specific to a patient's mandible. These ischemic changes appear to be cumulative in nature. As a result, a minor injury or disease can turn into a non-healing wound. That, in turn, can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of the bone marrow) (¶s 40 and 41).

Next, the Court should consider the "MEDICAL NEGLIGENCE FACTS" beginning at ¶ 64 of the Complaint. However, prior to considering the medical negligence facts, the Court should recognize Florida's stringent pre-suit medical negligence procedure set out in F.S. § 766.102 and/or 766.106. Briefly, prior to initiating this action, the Plaintiff hired a board certified oral surgeon to review the entire case and form an opinion as to whether he believed the standard of care fell below the acceptable standard in the community. The expert did conclude that each of the individual Medical Defendants and Brite Dental committed medical negligence. While this is only the medical expert's opinion, he was required to set it out in an affidavit and have it served upon each Medical Defendant prior to filing suit. The Complaint does allege at ¶s 69 and 70 that all pre-suit requirements were met. It would be impossible for the Court to conclude that a medical negligence claim could not possibly be proven against these Defendants in light of an affidavit from a medical expert attesting to his belief that medical negligence occurred.

The claims against the Medical Defendants were essentially that they failed to: a) determine what medication the Plaintiff was taking; b) diagnose her problem and properly treat her condition in a timely fashion, namely her infection in anterior

9

mandible; c) failed to diagnose and treat infection following tooth extraction, including failure to take cultures and sensitivities of bacteria and choose appropriate antibiotic; d) failed to refer her to a higher level of care; and e) Brite Dental is vicariously liable for the actions of its employees.

Florida's Medical Negligence pre-suit requirements make it very difficult to even bring a medical negligence claim that is not thoroughly investigated and supported by a qualified medical opinion. MERCK claims the fraudulent joinder of "the Dental Defendants is obvious under well-settled state law because (i) to the extent that Plaintiff claims that the Dental Defendants should have been aware of the alleged danger of Fosamax, such claims are in direct conflict with the Plaintiff's assertion that Merck concealed those same alleged dangers, and (ii) the remainder of Plaintiff's claims for dental malpractice are not based upon the same transaction or occurrence as Plaintiff's use of Fosamax" (Defendant's Notice of Removal ¶ 26).

First, the Plaintiff **never** alleges the Medical Defendants should have been aware of the alleged danger of Fosamax. Plaintiff only alleged they should have known what medication she was taking. The Medical Defendants did not prescribe Fosamax to the Plaintiff. It was prescribed by another physician. The remainder of the allegations involve failure to properly care for the patient and refer her to a higher level of care. The Fosamax problems, coupled with medical negligence, caused Ms. Anderson's damages. Plaintiff alleges, and asserts by affidavit of a medical expert, that the treatment fell below the standard of care.

Secondly, the Defendant cites no factual references whatsoever to support its contention that the medical negligence is not the same occurrence or transaction as the

Fosamax claim. The Complaint sets out detailed facts that inextricably intertwine the events in both time and involvement with each other. The Defendant makes no reference whatsoever in its Notice of Removal to separate the events. Of the two reasons MERCK asserts fraudulent joinder, the Plaintiff isn't alleging the first, and MERCK never argues the second, but only states it with no factual or legal support or even argument.

MERCK attempts to cram Plaintiff's claim into claims that have been successfully removed previously in an attempt to avoid the stringent standard applied to Removal actions. MERCK attaches two separate Orders regarding removal actions where Defendants were determined to be fraudulently joined. A review of Exhibits 3 and 4, cited in MERCK's Notice of Removal, substantiate Plaintiff's position and indicate a Remand is required.

Exhibit 3 is a Memorandum Opinion and Order in Omobude v. Merck and Robert Evans, M.D. This case was a civil action in the State of Mississippi against Merck and a prescribing physician for the death of the Plaintiff resulting from the prescription drug Vioxx. The Court permitted this case to be removed and denied a motion to remand filed by the Plaintiffs[2]. It was a so-called "fraudulent joinder" case. However, the glaring difference between Omobude and the present case is that the physician in Omobude did nothing other than prescribe the Vioxx that killed the plaintiff. Additionally, it was repeatedly and consistently alleged that the dangerous nature of Vioxx was concealed by Merck through its advertising and marketing. A brief paragraph from the Court's order succinctly sets out this glaring difference:

> "Merck argues that in light of plaintiff's repeated allegations that Merck misrepresented the safety and efficacy of its product and consistently concealed the known risks and dangers not only from the consuming

---

[2] There is no mention of any pre-suit requirement equivalent to the Florida's in the Mississippi case.

11

public but also from physicians, plaintiff's charge of medical negligence against Dr. Evans based upon nothing more than a conclusory allegation, wholly unaccompanied by any factual support, that Dr. Evans 'knew, or should have known, of the dangerous side effects of these medications,' and that 'his prescribing such medications in light of such knowledge presents deviation from the standard of care,' is manifestly insufficient to state a cognizable claim."

Unlike the case at bar, there were no factual allegations against Dr. Evans to support a malpractice claim. There was only a conclusory statement that he knew or should have known of the dangerous side effects, and this conclusory statement was contrary to everything else plead against Merck. Not only does the Plaintiff set out three specific causes of actions against each physician and a separate cause of action against the Dental company, these allegations are supported by an affidavit of an oral surgeon. Additionally, in the present case, the Plaintiff does not even allege the medical Defendants prescribed Fosamax to Ms. Anderson. None of this was present in the case MERCK cites for support of its position. This case is clearly distinguishable and actually supports Plaintiff's Motion for Remand.

Fosamax is inherently different than Vioxx in that the side effect of Fosamax, namely necrosis of the mandible, occurs when a minor procedure does not heal. (See ¶ 41 of Complaint). The Dentists in this case failed to properly diagnose and treat the problem. They basically prescribed an antibiotic for nearly 3 months before Ms. Anderson finally had to check into the hospital and an aggressive debridement was performed (¶ 32). Surely MERCK is going to offer the Dentists' negligence as a defense, or in mitigation of its damages in this case. The Dental Defendants are already pointing the proverbial finger at MERCK. It would not serve any party to force the Plaintiff to proceed on the medical negligence claim in State Court where the dental defendants are

blaming Fosamax, while at the same time proceeding against Fosamax in Federal Court with MERCK blaming the medical defendants. In both cases the Plaintiff would be left without a party that contributed to her damages. This issue is addressed in more detail below in the Fabre v. Marin, portion of this memorandum.

MERCK attaches another opinion to its Removal Notice that once again makes Plaintiff's case for Remand. In Exhibit 4 to the Notice of Removal, MERCK cites to a Western District of Washington Order Denying the Plaintiff in that case's Motion for Remand. The case involves a claim of the sale of defective over-the-counter drugs that contain the ingredient phenylpropanoline ("PPA"). The Plaintiff sued the manufacturer and distributors of the drug, as well as several retail stores. The Plaintiffs and the retail stores, "Bill's Dollar Store," were both Mississippi residents. Only two of six Plaintiffs purchased products from Bill's Dollar Store. Otherwise, the parties were diverse. The complaint contained failure to warn and design defect claims under the Mississippi Products Liability Act. Under that statute in Mississippi, the Plaintiff is required to show that at the time the product left the control of the manufacturer or seller, it was defective in failing to contain adequate warnings or instructions and/or was designed in a defective manner, and that the manufacturer knew or should have known of the danger. The Court concluded that one could not reasonably read the Complaint to support the idea that the retailer defendants had knowledge or reason to know of any dangers allegedly associated with PPA. As in the Omobude case in Exhibit 3, the main allegations against the removing party were inconsistent with the allegations against the non-diverse parties. The store simply sold the product. Those problems are not present whatsoever in this case.

13

While Exhibits 3 and 4 to the Defendant's Notice of Removal are very helpful to Plaintiff's case through the distinguishing factors, a local case that more factually aligns with this case is the Middle District of Florida decision of Judge Conway in <u>Tran v. Waste Management</u>, Case No.: 6:03-cv-127-Orl-22JGG. (A full copy of this opinion is attached to this Motion as **Exhibit A** for convenience).

The facts in the case at bar are even more favorable for a Remand than the <u>Tran</u> case that was properly remanded after removal by the Defendant. The basic facts of Tran were that Tran was killed in a work accident in Florida when he was backed over by a forklift operated by a co-worker. Defendants in the case were Waste Management, Inc., a Texas Corporation; Clark Equipment Company, a Delaware Corp.; Bobcat of Orlando, a Florida Corp.; and William Fravel, a citizen of Florida. Mr. Fravel was the driver of the forklift. The allegations in the suit were under the Florida Wrongful Death Act. Count I alleged a cause of action for intentional negligence against Waste Management; Count II alleged gross negligence against Mr. Fravel; Count III alleged a cause of action for strict liability product defects against Clark; Count IV alleged a cause of action for strict liability against Bobcat; and Count V alleged breach of implied warranty of fitness and merchantability against Bobcat. Suit was filed in the Ninth Judicial Circuit Court in and for Orange County, Florida. Clark filed a Petition for Removal to U.S. District Court based upon diversity. Clark alleged that Fravel and Bobcat were fraudulently joined.

Fravel's fraudulent joinder was based upon an assertion of Fravel and the Plaintiff being co-workers and Plaintiff's exclusive remedy against Fravel was the Worker's Compensation Statute, F.S. § 440.11. The District Court concluded that the Defendant failed to meet the burden of establishing federal diversity jurisdiction. The Court adopted

the report and recommendation of Magistrate Judge James G. Glazebrook. The Defendant filed objections to the report and the Court addressed those objections.

In the Order, the Court sets out the standard to be applied. "Statutes authorizing removal of actions to federal courts are to be strictly construed against removal (footnote omitted). In fact, because "[f]ederal courts are of limited jurisdiction,…there is a presumption against exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor or remand [fn 46]" [Russell Corp. v. am. Home Assur. Co., 264 F.3d 1040 (11th Cir. 2001)].

Then the Court addresses the "Law of Fraudulent Joinder":

"In the Eleventh Circuit, joinder has been deemed fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a resident shares no joint, several, or alternative liability with the nonresident defendants and the claim against the resident defendant has no real connection to the claims against the nonresident defendants (citations omitted)…

In determining "whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. [fn55] A federal court should make "these determinations based on the plaintiff's pleadings at the time of removal; but the court may [also] consider affidavits and deposition transcripts submitted by the parties." [fn56]

Tran Order pp. 11-12

The Court, in reviewing the facts in Tran, concluded that no one disputed that Tran and Fravel were co-workers. Therefore, the issue became whether the Count against Fravel could fall under one of the exceptions to the immunity provision of the Florida Worker's Compensation Statute. An exception to worker's compensation immunity is gross negligence. The Court concluded at page 15 of the Order, "Applying

15

the aforementioned standards to the case at hand, this Court finds that the Plaintiff's action for gross negligence against Mr. Fravel is not so obviously frivolous as to be considered fraudulent." The Court went on to state, "…This Court finds that there is a possibility that a state court would find that the complaint states a cause of action against Mr. Fravel." Id. at p. 15.

The Court also awarded attorney's fees stating at p. 16, "In this case, although the filing of the Notice of Removal may have been in good faith, the Notice was improper because this Court lacks subject matter jurisdiction. In fact, it can be stated with relative ease that the Notice was patently improper considering the facts presented in the case, the presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand, and the Eleventh Circuit precedent providing that in the remand context 'the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." The Court awarded attorney's fees to the Plaintiff.

    C.    *Statute of Limitations*

MERCK attempts to allege that the medical negligence claims were barred by the statute of limitations. This simply is not the case. There was available public information that would have proved to MERCK that the suit was timely filed. Attached as **Exhibit B** to this Motion is Plaintiff's Petition for Automatic 90 day Extension of Statute of Limitations, which was filed in state court on September 28, 2006. The cause of action accrued at the earliest on October 15, 2004. Plaintiff's Notice of Intent, which tolls the statute of limitations, was served on December 5, 2006. This claim is completely without merit.

## **FABRE V. MARIN**

As has become commonplace with litigation under *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993) and *Nash v. Wells Fargo Guard Services, Inc.,* 678 So.2d 1262 (Fla. 1996), plaintiffs who fail to name a potentially responsible defendant do so at their own peril, because defendants may amend their affirmative defenses, sometimes not until on the eve of trial, to assert the responsibility of a non-party. In one case out of the Middle District, the trial court actually allowed the plaintiffs to amend their complaint to add new defendants almost a year after the case was removed. See *Pettibone v. Walgreen Co.,* 2003 WL 22012202 (M.D. Fla. February 18, 2003). In allowing the amendment, the trial court wrote:

> There is no indication the joinder would be fraudulent or made in bad faith. Plaintiffs have an **arguable basis** for linking the two non-diverse parties, Hawkins Construction, Inc., and Michael Williams, to the design and/or maintenance of the parking lot area in which plaintiff, Kathleen M. Pettibone, fell. **Since Florida law provides that fault be apportioned among all potentially negligent parties in negligence lawsuits,** it is appropriate for the court to grant leave to amend the complaint in the instant case to include **all potential defendants identified by plaintiffs.** *Fabre v. Marin,* 623 So.2d 1182 (Fla. 1993)(*reversed on other grounds*); *Wal-Mart v. McDonald,* 676 So.2d 12 (Fla. 1st DCA 1996)(Emphasis added).

It is most disingenuous for MERCK to assert that Plaintiff's decision to name the treating physicians and their employer is somehow an example of fraudulent joinder, when MERCK itself would likely point the proverbial finger at the Medical Defendants at some point of no return, deep into the litigation, if it somehow mitigated their damages. If the Court determines the Medical Defendants were fraudulently joined, it would be tantamount to a dismissal of the entire claim against the Medical Defendants. It would be very difficult, if not impossible, to prevail on a medical negligence claim when the

17

Medical Defendants could simply blame MERCK, and the jury could not, and MERCK was not present in the Court room. Likewise, MERCK could blame the Plaintiff's damages on the Medical Defendants and potentially use Plaintiff's medical expert opinion against Plaintiff by convincing the jury the Medical Defendants caused the problems according to Plaintiff's own filings. Both cases would be hopelessly gutted by the Court.

## CONCLUSION

<u>Because there is a simple "possibility" that Plaintiff's Complaint states a cause of action against the Medical Defendants, MERCK cannot meet its extremely high burden of demonstrating fraudulent joinder.</u>

In <u>Montgomery and Larmoyeux v. Phillip Morris, Inc.</u>, 992 F.Supp. 1372 (S.D. Fla. 1998), Judge Gold granted the plaintiff's motion for remand, despite defendant's claim that Florida law did not recognize a cause of action against the non-diverse defendant, and therefore plaintiffs had fraudulently joined him to defeat diversity. In framing the analysis, Judge Gold wrote:

> The issue before the court is whether plaintiff's claim against defendant, Michael Maher, a citizen of Florida, is so **utterly devoid of merit** as to be considered frivolous. *Id.* At 1373. (Emphasis added).

In the now infamous tobacco attorney's fees dispute, the plaintiff's law firm filed a lawsuit in state court against the tobacco companies and one of its co-counsel alleging claims for tortious interference with a contract and/or business relationship. In asserting the basis for removal, the tobacco companies argued that notwithstanding Mr. Maher's Florida citizenship, which would normally defeat diversity jurisdiction, the case belonged in Federal Court because there was no possibility that the plaintiff could establish a cause of action against Maher for tortious interference. The defense relied on the general rule

18

of Florida law that no such action may be maintained against one who was a party to the contract. *Id.* However, once again recognizing the extremely limited availability of removal for fraudulent joined, Judge Gold noted:

> Thus the issue before the Court is a narrow one: Whether state law *might* **recognize a cause of action for tortious interference in light of the factual circumstances of the case.** *Id.* (Italics emphasis in original; bold faced emphasis added).

In explaining his decision to grant plaintiff's motion for remand, Judge Gold further reasoned:

> In this case, the court cannot say that plaintiff's claim was obviously fraudulent or frivolous. 'Frivolous pleas are those which are so clearly and palpably bad as to require no argument to convince the court thereof, and which would be pronounced by the court indicative of bad faith in the pleader on mere inspection.' Under Florida law, a lawsuit is frivolous only if there is a complete lack of justiciable issue which renders the action completely untenable. The court also recognizes that the Florida Rules of Professional Conduct provide that it is not 'frivolous' for an attorney to seek in good faith an extension, reversal or modification of existing law. *Id.* At 1375 (Citations omitted).

Judge Gold then concluded that the simple absence of Florida case law addressing the viability of the plaintiff's claim under the factual circumstances of that case, did not make it unreasonable for the plaintiff to argue as it did, and thus, there was a "possibility" that Florida law **could** recognize a cause of action for the tort alleged.

Judge Gold's ruling on a cause of action which had never been recognized in Florida, compared to the facts of this case, make it obvious this case must be remanded. Florida's medical negligence statute and rigorous pre-suit requirements rule out the possibility of fraudulent joinder barring some extraordinary circumstances. MERCK has failed to carry its heavy burden.

**WHEREFORE**, the Plaintiff respectfully requests that this action be remanded

19

back to State Court where it was originally filed and that the Plaintiff be awarded costs and fees for the improper removal.

> Respectfully submitted,
>
> s/ James A. Wardell
> JAMES A. WARDELL, ESQUIRE
> WARDELL & QUEZON, P.A.
> 805 W. Azeele Street
> Tampa, Florida 33606
> Telephone: (813) 387-3333
> Facsimile: (813) 387-3050
> Florida Bar No.: 0868061
> jwardell@jawlaw.net
> Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 15, 2007, a true and correct copy of the foregoing document and the notice of electronic filing will be sent by U.S. Mail to the following non-CM/ECF participant:

Juan Carlos Garcia
Walton Lantaff Schroeder & Carson, LLP
Airport Executive Center
2203 North Lois Avenue, Suite 750
Tampa, FL 33607

and the same has been electronically mailed to the following on June 15, 2007:

Thomas Larry Hill    lhill@mhw-law.com, ljohnson@mhw-law.com

Thomas Saieva    zebra17@tampabay.rr.com, lsimerl@tampabay.rr.com

> s/ James A. Wardell
> JAMES A. WARDELL, ESQUIRE