Norman C. Kleinberg
Theodore V. H. Mayer
William J. Beausoleil
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

Paul F. Strain
M. King Hill, III
David J. Heubeck
VENABLE LLP
Two Hopkins Plaza, Suite 1800
Baltimore, Maryland 21201
(410) 244-7400

*Attorneys for Defendant Merck & Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION ) ) ———————————————————— ) *This Document Relates to:* ) Nancy Anderson v. Brite Dental Corp., *et al.*: ) Case No. 1: 07-cv-09485-JFK ) ) ———————————————————— ) | MDL NO. 1789 1:06-md-1789 (JFK) |

**OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
OF DEFENDANT MERCK & CO., INC.**

TABLE OF CONTENTS

Page

PROCEDURAL HISTORY ..................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

ARGUMENT .........................................................................................................................3

A.      There Is No Dispute That There Is More Than $75,000
In Controversy In This Case. ................................................................................3

B.      The Dental Defendants Have Been Fraudulently And Improperly
Joined, And Their Citizenship Should Be Ignored For Purposes
Of Removal. ..........................................................................................................6

CONCLUSION .....................................................................................................................11

## TABLE OF AUTHORITIES

**Case**                                                                                                                                                  **Page(s)**

*Albertson's, Inc. v. Adams*, 473 So.2d 231 (Fla. App. 2d Dist. 1985),
   *rev. denied*, 482 So.2d 347 (Fla.1986), ................................................................. 9

*Alshakenbeh v. Food Lion, LLC*, 2007 WL 917354 (M.D. Fla. March 23, 2007) ............... 5

*Am. Mut. Liab. Ins. Co. v. Flintkote Co.*, 565 F. Supp. 843 (S.D.N.Y. 1983) ...................... 6

*Barbee v. U.S.*, 2005 WL 3336504 (W.D. Wis. 2006) ......................................................... 5

*Becker v. Halliday*, 554 N.W. 2d 67 (Mich. App. 1996) ...................................................... 5

*Becker v. Woods*, 806 N.Y.S.2d 704 (N.Y. App. Div. 2005) ............................................... 5

*Bowers v. Liuzza*, 769 So.2d 88 (La. App.), *writ. denied*, 776 So.2d 468 (La. 2000) ......... 5

*Collier v. Cawthon*, 570 S.E.2d 53 (Ga. App. 2002) ............................................................ 6

*Constant v. Int'l House of Pancakes, Inc.*, 487 F. Supp. 2d 1308 (N.D. Ala. Apr. 30,
   2007). .................................................................................................................................. 4

*E.R. Squibb & Sons, Inc. v. Farnes*, 697 So.2d 825 (Fla. 1997) .......................................... 7

*Espinosa v. State*, 690 So.2d 656 (Fla. App. 5th Dist. 1997) ............................................... 7

*Gilman v. BHC Secs., Inc.*, 104 F.3d 1418 (2d Cir. 1997) ................................................... 4

*Greene v. Wyeth*, 344 F. Supp. 2d 674 (D. Nev. 2004) ...................................................... 10

*Gulf Refining Co. v. Wilkinson*, 114 So. 503 (Fla. 1927). ................................................... 9

*Herpin v. Witherspoon*, 664 So.2d 515 (La. App. 1995) ..................................................... 5

*Howie v. Walsh*, 609 S.E.2d 249 (N.C. App. 2005) ............................................................. 5

*In re Baycol Prods. Litig.*, Case No. 03-3150, 2003 WL 23305516
   (D. Minn, Dec. 15, 2003) ................................................................................................... 10

*In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001) ........................ 6, 7

*In re Rezulin Prods. Liab. Litig.*, Case No. 00 Civ. 2483 (LAK),
   2003 WL 21276425 (S.D.N.Y. June 2, 2003) ................................................................. 6, 9

*Lowe's OK'd Used Cars, Inc. v. Acceptance Ins. Co.,* 995 F. Supp. 1388
    (M.D. Ala. 1998) ..................................................................................................5

*Omobude v. Merck & Co., Inc.*, Civil Action No. 3:03CV528LN
    (S.D. Miss. Oct. 3, 2003) ...................................................................................11

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998). .......................................6

*Peacock v. Gen. Motors Acceptance Corp.*, 432 So.2d 142 (Fla. App. 1st Dist. 1983) .......8

*Piselli v. 75th Street Medical*, 808 A.2d 508 (Md. 2002) ......................................................6

*Preston v. Dupont*, 35 P.3d 433 (Colo. 2001) .....................................................................5

*Shaver v. U.S.*, 319 F. Supp. 2d 649 (M.D.N.C. 2004) .......................................................6

*Spier v. Bayer Corp.*, No. 02-4835, 2003 WL 21223842 (D. Minn. May 27, 2003).........11

*Touche Ross & Co. v. Sun Bank of Riverside,* 366 So.2d 465 (Fla. App. 3d Dist.),
    *cert. denied,* 378 So.2d 350 (Fla.1979) ..............................................................9

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 (11th Cir. 1998) ..................................6

*Washburn v. Holbrook*, 806 P.2d 702 (Or. App. 1991) .......................................................5

## **Other Authorities**

FED. R. CIV. P. 20 ...............................................................................................................6

Defendant Merck & Co., Inc. ("Merck"), by its undersigned counsel, hereby files this memorandum in opposition to Plaintiff's Motion to Remand. Plaintiff's own allegations and her admissions in her motion papers demonstrate that far more than $75,000 is in controversy in this case, and that the in-state dentists upon whom Plaintiff bases her remand motion have been fraudulently and improperly joined in this action. Plaintiff bases her claims against Merck upon the same allegations pled by nearly every other plaintiff in the Fosamax cases. These claims focus on what warnings Merck allegedly should have provided to Plaintiff's prescribing physician since she began taking Fosamax in 1996, and these claims do not materially differ from the claims asserted in the other Fosamax cases that are being coordinated in the Fosamax MDL proceedings. Conversely, Plaintiff's claims against the Florida-resident dentists are based upon subsequent actions allegedly taken by those dentists nearly 10 years after Plaintiff began taking Fosamax. These medical malpractice claims against the dentists are not based upon the same transactions or occurrence as the product liability claims against Merck. Because the dentists are not properly joined in this action, they should be dropped as parties from this case, and Plaintiff's Motion to Remand should be denied.

## PROCEDURAL HISTORY

Plaintiff Nancy Anderson is a citizen of Florida who claims to have been injured as a result of using Fosamax at her physician's direction. Complaint ¶¶ 2, 54-55. Fosamax is a prescription medication manufactured by Defendant Merck, which is a resident of New Jersey. Plaintiff filed this case in Florida state court, and Merck removed the case to this Court on June 4, 2007, after Merck was served on May 14, 2007. Plaintiff filed a Motion to Remand on June 15, 2007, which was denied without prejudice

1

by the operation of Case Management Order No. 3 when this case was transferred to the Fosamax MDL Proceedings. Plaintiff refiled her Motion to Remand on February 25, 2008.

## FACTUAL BACKGROUND

Plaintiff alleges that she developed osteonecrosis of the jaw as a result of taking Fosamax prescribed by her physician. Complaint ¶ 58. Plaintiff claims that Merck "knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant MERCK did not adequately and sufficiently warn consumers, including Plaintiff Nancy Anderson, or the medical community, of such risks." Complaint ¶ 53. The allegations against Merck pled in this Complaint are virtually word-for-word identical to the Fosamax allegations pled in numerous other cases that have been transferred to the Fosamax MDL proceedings. *Compare* Complaint ¶¶ 35-63 *with* Complaint ¶¶ 22-45, filed in *Walla v. Merck & Co., et al.* (attached to the Declaration of Theodore V. H. Mayer ("Mayer Decl.") as Exhibit A), *and with* Complaint ¶¶ 23-54, filed in *Purdy et al. v. Merck & Co., et al.* (Mayer Decl. Ex. B ), *and with* Complaint ¶¶ 18-44, filed in *Clayton v. Merck & Co., et al.* (Mayer Decl. Ex. C).

In addition to the standard allegations filed against Merck in all Fosamax cases, the Complaint contains numerous allegations that demonstrate the significant damages that Plaintiff seeks. Plaintiff complains that after oral surgery in October 2004, she experienced severe jaw pain and infection, including "constant throbbing" and "oozing pus," and that she was ultimately treated for a "pathologic fracture of her anterior mandible" as well as "severe osteonecrosis of the jaw and osteomyelitis." Complaint ¶¶ 14, 25, 28, 32, 58. Plaintiff also claims that osteonecrosis, or bone death, "is very

2

difficult to treat and typically is not reversible," and that it "is a serious medical event and can result in severe disability and death."  Complaint ¶¶ 43, 45.  Plaintiff further claims to have suffered "severe mental and physical pain and suffering," to have "sustained permanent injury," and to have undergone "emotional distress."  Complaint ¶ 59.

Merck is a citizen of New Jersey; it is a New Jersey corporation and its principal place of business is in New Jersey.  Complaint ¶ 7.  In an effort to keep this case in Florida state court, Plaintiff has attempted to attach her claims against Merck -- based upon information that Plaintiff alleges that Merck was required to provide to her prescribing physician in 1996 (when she allegedly began taking Fosamax, Complaint ¶34) and thereafter -- to unrelated claims against a number of dentists ("the Dental Defendants") allegedly arising from a broken tooth during dental surgery.  Complaint ¶¶ 64-70.  These latter claims, however, are based on an entirely different set of facts and occurrences than Plaintiff's claims against Merck.

## ARGUMENT

Plaintiff makes two arguments for why this Court should remand this action to the state court.  First, Plaintiff argues that "[w]hile the Plaintiff believes the claim will exceed $75,000.00," Merck has somehow failed to prove more than $75,000 is at issue.  (Memorandum at pg. 6.)  Second, Plaintiff claims that her malpractice claims against her dentists are properly made a part of this products liability lawsuit against Merck.  Both of Plaintiff's arguments fail for the reasons described below.

### A.     There Is No Dispute That There Is More Than $75,000 In Controversy In This Case.

Plaintiff's contention that Merck has failed to "establish" the jurisdictional amount required by this Court for diversity jurisdiction appears to be grounded in a

3

mistake as to the applicable standard the Court is to apply in this regard. Merck need not "prove" beyond a reasonable doubt that more than $75,000 is at issue. Rather, the amount in controversy only needs to be demonstrated by a preponderance of the evidence. *See Gilman v. BHC Secs., Inc.*, 104 F.3d 1418, 1421 (2d Cir. 1997). In her Motion to Remand, Plaintiff concedes that her claim "likely exceeds $75,000," and states that she "believes the claim will exceed $75,000." Motion to Remand at 6. Thus, both Merck and Plaintiff agree that more than $75,000 is, in fact, in controversy. Plaintiff's admissions, by themselves, are sufficient to demonstrate that the Court's minimum jurisdictional amount has been satisfied.

In addition, the Complaint itself shows that more than $75,000 is in controversy in this case. As noted above, while Plaintiff has not pled a specific dollar amount in her Complaint, she makes numerous factual allegations that demonstrate the magnitude of her claims, including severe jaw pain and infection, treatment for a "pathologic fracture of her anterior mandible," as well as "severe osteonecrosis of the jaw and osteomyelitis." Complaint ¶¶ 14, 25, 28, 32, 58. She alleges that osteonecrosis, or bone death, "is very difficult to treat and typically is not reversible," and that it "is a serious medical event and can result in severe disability and death." Complaint ¶¶ 43, 45. Plaintiff also claims to have suffered "severe mental and physical pain and suffering," to have "sustained permanent injury," and to have undergone "emotional distress." Complaint ¶ 59. These factual allegations, by themselves, demonstrate that Plaintiff's claims seek to recover far more than the minimum jurisdictional threshold.[1]

---

[1] In other cases, plaintiffs have expressly limited their claims to less than the Court's jurisdictional threshold, by making a binding promise to recover only $75,000 or less. *See, e.g., Constant v. Int'l House of Pancakes, Inc.*, 487 F. Supp. 2d 1308, 1309 (N.D. Ala. Apr. 30, 2007). Rather than limiting her claims here, however, Plaintiff actually admits that she seeks to recover

4

Decisions rendered in comparable cases provide strong evidence that more than $75,000 is in controversy. *See Alshakenbeh v. Food Lion, LLC*, 2007 WL 917354, at 2 (M.D. Fla. March 23, 2007) (finding that defendant had shown the requisite amount in controversy by citing verdicts in similar cases) (Mayer Decl. Ex. D); *Lowe's OK'd Used Cars, Inc. v. Acceptance Ins. Co.,* 995 F. Supp. 1388, 1392-93 (M.D. Ala. 1998). As Merck cites in its notice of removal, the federal and state reporters are replete with reported cases in which jaw or similar facial injuries, such as those Plaintiff claims, led to jury or court awards far in excess of $75,000. *See, e.g., Howie v. Walsh*, 609 S.E.2d 249 (N.C. App. 2005) (addressing jury award of $300,000 against dentist who fractured patient's jaw during procedure); *Becker v. Woods*, 806 N.Y.S.2d 704 (N.Y. App. Div. 2005) (affirming jury award of $840,000 in damages where dental patient suffered from permanent paresthesia); *Preston v. Dupont*, 35 P.3d 433 (Colo. 2001) (addressing jury award of more than $250,000 for damage to alveolar nerve in jaw); *Bowers v. Liuzza*, 769 So.2d 88 (La. App.) (finding that minimum adequate damage award for nerve damage in jaw was an amount that exceeded $175,000), *writ. denied*, 776 So.2d 468 (La. 2000); *Becker v. Halliday*, 554 N.W. 2d 67 (Mich. App. 1996) (jury award of $200,000 in damages, where syringe lodged in upper jaw); *Herpin v. Witherspoon*, 664 So.2d 515 (La. App. 1995) (plaintiff entitled to receive more than $75,000 as a result of temporomandibular joint (TMJ) dysfunction); *Washburn v. Holbrook*, 806 P.2d 702 (Or. App. 1991) (affirming jury finding of $400,000 in damages as a result of damage to jaw during root canal).

---

more than $75,000, while at the same time claiming that Merck has not proven that her claims are as large as she now admits.

5

In the same vein, there have been numerous cases awarding far more than $75,000 for claims based on osteonecrosis or avascular necrosis of the hip, knee, or other joint. *See, e.g., Barbee v. U.S.*, 2005 WL 3336504, at *1-2 (W.D. Wis. 2005) (finding that plaintiff suffered nearly $700,000 in damages for hip injuries that included avascular necrosis) (Mayer Decl. Ex. E); *Shaver v. U.S.*, 319 F. Supp. 2d 649 (M.D.N.C. 2004) (awarding more than $75,000 in damages for osteonecrosis in knee caused by automobile accident); *Piselli v. 75th Street Medical*, 808 A.2d 508 (Md. 2002) (addressing jury award of $410,000 for medical malpractice that led to avascular necrosis of the hip); *Collier v. Cawthon*, 570 S.E.2d 53 (Ga. App. 2002) (affirming jury award of $170,000 for avascular necrosis of the hip).

> B. **The Dental Defendants Have Been Fraudulently And Improperly Joined, And Their Citizenship Should Be Ignored For Purposes Of Removal.**

It is well settled that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998).

A diverse defendant is improperly joined where the claims against it and the claims against its nondiverse co-defendant are not based upon the same underlying operative facts. *See In re Rezulin Prods. Liab. Litig.*, Case No. 00 Civ. 2483 (LAK), 2003 WL 21276425, at *1 (S.D.N.Y. June 2, 2003) (*Rezulin I*) (Mayer Decl. Ex. F); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (finding fraudulent joinder where a defendant "is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant"); FED. R.

6

CIV. P. 20.[2]  The possibility of establishing a properly joined cause of action must be reasonable rather than merely theoretical.  *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 280 (S.D.N.Y. 2001) ("Rezulin II").

Here, Plaintiff's product liability claims against Merck do not arise from same transaction or occurrence as her medical malpractice claims against the Dental Defendants.  In fact, Plaintiff asserts contradictory allegations against Merck and thus fails to state any claim against Merck.  Plaintiff claims that she was prescribed and began taking Fosamax 11 years ago, in 1996.  Complaint ¶ 56.  Those claims necessarily must focus on the information provided by Merck to her prescribing physician, because Merck owes no duty directly to Plaintiff.  *See E.R. Squibb & Sons, Inc. v. Farnes*, 697 So.2d 825, 827 (Fla. 1997) (stating that prescription drugs "can be administered only under the direction of a physician, and Florida law requires that the manufacturer provide an adequate warning only to the physician, or 'learned intermediary.'").  While she claims that she "would not have used FOSAMAX had Defendant MERCK properly disclosed the risks associated with the drug," Complaint ¶ 61, her own Complaint contradicts this conclusory assertion by stating that she *continues* to take Fosamax, despite her indisputable present knowledge of the alleged risks that she asserts in her Complaint.  Complaint ¶ 34 (stating that she has been taking Fosamax from May 1996 to the present).  Such contradictory allegations fail to state any claim against Merck.  *See Espinosa v. State*, 690 So.2d 656, 657 n.1 (Fla. App. 5th Dist. 1997) (stating that "if a complaint

---

[2] A defendant is also fraudulently joined where there "is 'no reasonable basis' for predicting liability on the claims alleged." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 280 n.4 (S.D.N.Y. 2001) (quoting *Pampillona*, 138 F.3d at 461) (*Rezulin II*); *Am. Mut. Liab. Ins. Co. v. Flintkote Co.,* 565 F. Supp. 843, 845 (S.D.N.Y. 1983) (noting that the test for fraudulent joinder "has uniformly been at least whether there is any reasonable basis for predicting that state law might impose liability in the non-diverse defendant," and cited by *Rezulin II*, *supra*).

contains conflicting allegations in the same count, the allegations negate each other and no cause of action is pled"); *Peacock v. Gen. Motors Acceptance Corp.*, 432 So.2d 142, 146 (Fla. App. 1st Dist. 1983) (same).

        Plaintiff's claims against the Dental Defendants are very different. These claims are based on events that occurred nearly 10 years after Plaintiff was first prescribed and began taking Fosamax. Plaintiff asserts that during oral surgery performed by one of the Dental Defendants in 2004, her tooth broke off at the gum line, and that the Dental Defendants thereafter failed properly to diagnose and treat the resulting infection. (Complaint ¶¶ 15-33). There is no allegation that Merck had anything to do with this oral surgery. Rather, Plaintiff claims that the Dental Defendants failed to "timely diagnose and treat infection following extraction of tooth in an appropriate manner" and failed to refer Plaintiff "to a higher level of care after it was clear the infection was not being eradicated." (Complaint ¶¶ 65-67; *see also* Complaint ¶ 64). Plaintiff also alleges, in cursory form, that Brite Dental Care, the corporate Dental Defendant, failed to "determine what medication she was taking," although no such allegation is made against the three individual dentists who treated her, and Plaintiff now disavows that this assertion has anything to do with Fosamax. (Complaint ¶ 64); *see also* Motion to Remand at 9 (stating that Plaintiff does not allege that the Dental Defendants "should have been aware of the alleged danger of Fosamax"). In essence, Plaintiff herself essentially admits that her claims against the Dental Defendants, for their alleged failure to treat her infection, have nothing to do with her claims alleging that Merck failed to provide adequate warnings to Plaintiff's prescribing physician.

8

For this reason, the fraudulent joinder of the Dental Defendants is obvious under well-settled state law. "A joint tort is essential to a joint action for damages therefor against several parties." *Gulf Refining Co. v. Wilkinson*, 114 So. 503, 506 (Fla. 1927). Here, Merck and the Dental Defendants are not joint tortfeasors because the duties that Plaintiff alleges each owed her have no temporal, legal or even logical connection. For example, in *Albertson's, Inc. v. Adams*, 473 So.2d 231 (Fla. App. 2d Dist. 1985), *rev. denied*, 482 So.2d 347 (Fla.1986), the Florida intermediate appellate court concluded that a pharmacy and a doctor were not joint tortfeasors, and that the claims against them were not based upon the same transactions, where the pharmacy had filled a prescription improperly and the plaintiff's physician failed to notice, in a subsequent visit, that the prescription was incorrect. Even though these two alleged failures contributed to the same harm (resulting from the improperly filled prescription), the actions of the two involved disparate duties and different times. *Id.* at 233; *see also Touche Ross & Co. v. Sun Bank of Riverside,* 366 So.2d 465 (Fla. App. 3d Dist.), *cert. denied,* 378 So.2d 350 (Fla.1979) (finding that plaintiff's claim that bank wrongfully accepted checks tendered in furtherance of fraudulent scheme and its claim that accountants breached their duties in failing to detect the same fraudulent scheme were not "joint" torts, and that the bank and accountants were not jointly liable for the harm caused as a result of the fraud).

Thus, since Plaintiff's claims against the Dental Defendants are based on alleged negligence in performing oral surgery, diagnosing an infection, or referring Plaintiff "to a higher level of care," years after Plaintiff began taking Fosamax, such claims are not based upon the same transactions or occurrences as Plaintiff's products liability claims against Merck, and they are not properly joined in this case. In *Rezulin I*, 2003 WL

9

21276425, at *1, the court found that malpractice claims against the plaintiff's former physicians were not properly joined to a products liability complaint, where the plaintiff alleged that the physicians had failed to properly diagnose and monitor the plaintiff's medical condition, where that condition allegedly arose from the use of a drug. The court held that the malpractice claim against the doctors did not arise from the same transaction or occurrence as the claims against the drug's manufacturer.. *Id.* at * 2. Plaintiff's claims against the Dental Defendants suffer from the same defect. *Cf. Greene v. Wyeth*, 344 F. Supp. 2d 674, 683 (D. Nev. 2004) (severing claims against doctors in multiple plaintiff action, where claims were not based on a common transaction or occurrence).[3]

Finally, Plaintiff disavows in her Motion to Remand any attempt to link Merck's alleged failure to provide warnings to her prescribing physician and her claims against the Dental Defendants. Motion to Remand at 9 (stating that "the Plaintiff **never** alleges the Medical Defendants should have been aware of the alleged danger of Fosamax" (emphasis in original)). Even had she not done so, however, it should be clear that she could not have filed suit against the Dental Defendants for failing to recognize an alleged link between Fosamax and osteonecrosis of the jaw, where the Plaintiff *also* contends that Merck concealed that same information. *See In re Baycol Prods. Litig.*, Case No. 03-3150, 2003 WL 23305516, at *2 (D. Minn, Dec. 15, 2003) (finding doctor fraudulently joined because, where plaintiff claimed that manufacturer failed to properly represent the risks of a drug, the plaintiff "failed to demonstrate that her physician knew or should have

---

[3]   Based on Merck's review of the pleadings and its contact with the clerk of the Florida state court before removal, Merck stated in its Notice of Removal on information and belief that Plaintiff's claims against the Dental Defendants may be barred by limitations. The Dental Defendants who have answered in this case also have raised the statute of limitations as an affirmative defense. The Court does not need to address these limitations issues at this time, however. As discussed in the text above, this case is properly removed, and the Dental Defendants are not properly joined, because the claims against the Dental

known of Baycol's risks") (Mayer Decl. Ex. G); *Spier v. Bayer Corp.*, No. 02-4835, 2003 WL 21223842 (D. Minn. May 27, 2003) (same) (Mayer Decl. Ex. H); Opinion and Order filed October 3, 2003, in *Omobude v. Merck & Co., Inc.*, Civil Action No. 3:03CV528LN (S.D. Miss.), at 3 (finding doctors fraudulently joined to products liability complaint where Plaintiff claimed that Merck concealed information relating to drug, and also claimed that the doctors failed to act upon that same information) (Mayer Decl. Ex. I). Plaintiff attempts to distinguish these cases by arguing that the plaintiffs in those cases had not made specific allegations of negligence against the doctors. Motion to Remand at 10-11. However, the factual allegations pled against the Dental Defendants in this case merely emphasize the extent to which the claims against the Dental Defendants and Merck are widely disparate in terms of the applicable duties, the facts relating to those alleged duties, and the timeframes during which those alleged duties occurred or were breached.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion to Remand should be denied.

---

Defendants are not based upon the same transaction or occurrence as the claims against Merck.

|  |  |
|---|---|
| DATED: April 21, 2008 | Respectfully submitted, |
|  | HUGHES HUBBARD & REED LLP |
|  | By: __/s/_____<br>Norman C. Kleinberg<br>Theodore V. H. Mayer<br>William J. Beausoleil<br>One Battery Park Plaza<br>New York, NY 10004-1482<br>(212) 837-6000<br>kleinber@hugheshubbard.com<br>mayer@hugheshubbard.com<br>beausole@hugheshubbard.com |
|  | Paul F. Strain<br>M. King Hill, III<br>David J. Heubeck<br>Randolph S. Sergent<br>VENABLE LLP<br>Two Hopkins Plaza, Suite 1800<br>Baltimore, MD 21201<br>(410) 244-7400 |
|  | *Attorneys for Defendant Merck & Co., Inc.* |